**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

MARGARET R. WALLACE,         :
         :
    **Plaintiff,**         :
         :
**vs.**         :CIVIL ACTION NO.12-00587-CG-B
         :
**SUNTRUST MORTGAGE, INC.,**         :
***et al.,***         :
         :
    **Defendants.**         :

## Report and Recommendation

This matter is before the Court on Defendants SunTrust and Federal National Mortgage Association's Motion to Dismiss Plaintiff's Complaint (Doc. 10). The motion has been fully briefed and has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned RECOMMENDS that Defendants' motion be **GRANTED, in part**, and **DENIED, in part**.

### I. Background Facts

Plaintiff Margaret Wallace (hereinafter "Plaintiff" or "Wallace") brought this action against SunTrust Mortgage, Inc. (hereinafter "SunTrust") and Federal National Mortgage Association (hereinafter "Fannie Mae") following the foreclosure on her home located at 69 South Julia Street in

Mobile, Alabama.[1]  Wallace purchased her home on January 12,

2007 with an adjustable rate mortgage secured by SunTrust.

(Doc. 1-1, ¶ 4).  Around March or April 2009, Plaintiff fell

behind on her mortgage payments and "contacted SunTrust and

received a response from their loss mitigation department

suggesting a method by which the loan could be brought

current." (Id. at ¶ 5).  According to Wallace, she entered into

a forbearance agreement with SunTrust on May 23, 2009 in order

to bring her loan current[2]. (Id.).  The forbearance agreement

required four monthly payments in the amount of $1400. (Id. at

13).  The agreement also provided as follows:

> I\we understand that my\our monthly payment is
> based on escrow collection as of today's date.
> Any changes to the monthly payment amount after
> today's date may cause the payment plan amount to
> increase or decrease. I\we will receive a
> separate notice if this occurs and must contact
> SunTrust Mortgage to confirm any changes in
> my/our payment plan amount(s).
>
> All of the provisions of the note and security
> instrument, except as herein provided, shall
> remain in full force and effect. Upon the breach

---

[1]  Plaintiff originally commenced this action in the Baldwin
County Circuit Court on August 7, 2012. (Doc. 1).  Defendants
removed this action based on diversity jurisdiction on
September 14, 2012. (Id.).

[2] The forbearance agreement is before the Court because it was
attached to Wallace's complaint. Starship Enterprises of
Atlanta, Inc. v. Coweta Cnty., 708 F.3d 1243, 1253 (11th Cir.
2013) ("[A]nalysis of a Rule 12(b)(6) motion is limited
primarily to the face of the complaint and attachments
thereto.").

of any provision of this agreement, SunTrust
Mortgage may terminate this agreement and
institute foreclosure proceedings in accordance
with the terms of the security instrument without
regard to this agreement.

(Id.).[3]

Wallace contends that she made all the payments pursuant

to the terms of the forbearance agreement, and although she

occasionally contacted SunTrust to ensure that she was in

compliance with their requirements and to ensure that the loan

modification procedure was ongoing, no SunTrust employee ever

informed her that her monthly payments made pursuant to the

forbearance agreement were not being applied to her loan, or

that her loan was in delinquent status. (Id. at ¶ 6).

Wallace avers that she continued to make her monthly

payments, and that on May 22, 2010, without notice or

explanation, SunTrust sent her a letter along with a refund

check in the amount of $2582.02. (Id. at ¶ 7). According to

---

3 The forbearance agreement was accompanied by a letter that
reads in part as follows:

A Forbearance Agreement for the above referenced
loan is enclosed for your review. The payments of
the plan must be received at SunTrust Mortgage,
Inc. on or before the date specified by the plan.
Please be advised that even though we are
allowing you forbearance to avoid foreclosure we
will continue to report the default status of
your loan to the major credit bureaus. Failure to
keep the terms of this agreement could result in
immediate referral to foreclosure.

(Id.).

Wallace, the letter advised her that her loan was delinquent, that $2582.02 was being refunded to her because it was not sufficient to bring her loan current and that $19,494.99 was required in order to bring her loan current. (Id.). Wallace avers that over an unspecified two-year period, she and her legal counsel have communicated with SunTrust and its various representatives in an effort to obtain information about the status of her loan and the steps necessary to bring her loan current, and have further provided any and all information SunTrust and its representatives have requested. (Id. at ¶ 8). Wallace contends that SunTrust and its representatives promised to work with her to bring her loan current; however, they provided her inconsistent information about the status of her loan, and foreclosed on her house on April 21, 2011. (Id. at ¶¶ 9-10). Fannie Mae filed an eviction proceeding against Wallace in state court on July 13, 2012 in an effort to dispossess her of the subject property; however, Wallace remains in possession of the property. (Id. at ¶¶ 10-11).

In her complaint, Wallace asserts the following claims against SunTrust: (I) wrongful foreclosure, (II) fraud, (III) breach of contract, (IV) breach of implied covenant of good faith and fair dealing (V) intentional infliction of emotional distress, (VI) negligence (VII) wantonness and (VIII) slander

of title.  Wallace has asserted a single claim against Fannie Mae for transfer of title (XI).

Pending before the Court is Defendants' motion to dismiss Wallace's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants assert that Wallace's negligence, wantonness, and fraud claims are barred by the applicable statutes of limitation and the Statute of Frauds.  Defendants further assert that all of Wallace's tort claims are substantively deficient.  Additionally, Defendants assert that Wallace's breach of contract claim fails because SunTrust did not breach the forbearance agreement and any allegations regarding an unwritten permanent modification agreement are barred by the Statute of Frauds.  In opposition to Defendants' motion, Wallace has submitted a brief conclusory response that is wholly devoid of any case authority.

## II. Analysis

### A. Legal Standard for Fed. R. Civ. Pro. 12(b)(6).

Rule 8(a) of the Federal Rules of Civil Procedure requires that a plaintiff present "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed.

2d 929 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (internal citations omitted). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id., 550 U.S. at 570.

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the non-moving party's allegations as true; however, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court makes reasonable inferences in the plaintiff's favor, "but [is] not required to draw plaintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

In Iqbal, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require

detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. Id. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## B. Wrongful Foreclosure Claim (Count I).

In Count One of Wallace's complaint, she asserts a claim against SunTrust for wrongful foreclosure. In support of her claim, Warren alleges that "SunTrust initiated a foreclosure against [her] in violation of the law" because she "is not now, nor has she ever been in default of her Mortgage loan. As a result, there was no default on which to base a mortgage foreclosure action." (Doc. 1-1, ¶ 13-16).

SunTrust seeks dismissal of this claim on the ground that it is improperly plead. Specifically, SunTrust asserts that Alabama law permits wrongful foreclosure claims only when "'a mortgagee uses the power of sale given under a mortgage for a

purpose other than to secure the debt owed by the mortgager.'" (Doc. 11 at 15 (citing Jackson v. Wells Fargo Bank, N.A., 90 So. 3d 168, 171 (Ala. 2012)). SunTrust avers that because Wallace alleges that the foreclosure was wrongful solely because she was not in default on her mortgage loan and she does not allege that the foreclosure was instituted for a purpose other than to secure the debt owned by her, then, Plaintiff's complaint fails to state a cognizable claim for wrongful foreclosure under Alabama law. (Doc. 11 at 16).

"Alabama law is crystal clear that a wrongful foreclosure action lies only where the power of sale is exercised for an improper purpose". Selman v. CitiMortgage, Inc., 2013 U.S. Dist. LEXIS 37017 (S.D. Ala. March 5, 2013) (citing Jackson, v. Wells Fargo Bank, N.A., 90 So. 3d 168, 171 (Ala. 2012). In Jackson, the Alabama Supreme Court observed that:

> "Generally the purpose for which the power of sale is given being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power. If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made. Wittmeier v. Tidwell, 147 Ala. 354, 40 So. 963 [(1906)], and authorities there cited. Or, as was said in the case of Castleman v. Knight, 215 Ala. 429, 110 So. 911 [(1927)]: "If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill

motive, to effect means and purposes of his own, or to
serve the purposes of other individuals, the court
considers that to be what it calls a fraud in the
exercise of the power, because it is using the power
for a purpose foreign to the legitimate purposes for
which it was intended." <u>Paint Rock Props. v. Shewmake</u>,
393 So. 2d 982, 983-84 (Ala. 1981).

<u>Id.</u> 90 So. 3d at 171-172. The Court concluded that because the
plaintiffs had not argued or alleged that the power of sale was
exercised for any purpose "other than to secure the debt owed
by [them]", the trial court did not err in dismissing their
negligent foreclosure claim on summary judgment. <u>Id.</u>; <u>see also</u>
<u>Phillips v. Mortgage Electronic Registration Systems, Inc.</u>,
2013 U.S. Dist. LEXIS 49352 *fn 13 (N.D. Ala. April 5, 2013) (A
claim for "wrongful foreclosure" exists under Alabama law only
to the extent that it is alleged and evidence shows that the
foreclosure was undertaken for an improper purpose); <u>Selman v.</u>
<u>CitiMortgage, Inc.</u>, 2013 U.S. Dist. LEXIS 37017 (S.D. Ala.
March 5, 2013) (because plaintiffs' pleading reveals that no
foreclosure sale occurred and imputes no improper motive to
CitiMortgage for conducting any such foreclosure (had a sale
taken place), plaintiffs have failed to state a cognizable
claim for wrongful foreclosure under Alabama law); <u>In re</u>
<u>Sharpe</u>, 391 B.R. 117, 153 (Bankr. N.D. Ala. 2008) ("Under
Alabama law, if an action by a mortgagee was for the purpose of
securing the debt owed by the mortgagor, while it may be wrong

for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure."); Ford v. Central Loan Admin., 2011 U.S. Dist. LEXIS 115292 (S.D. Ala. Oct. 5, 2011) (dismissing wrongful foreclosure cause of action where complaint established that "plaintiff does not know whether a foreclosure sale has taken place" and "says nothing about any improper purpose, ill motive, or action outside the boundaries of the applicable contract").

In the instant action, Wallace claims that "[o]n April 21, 2011, despite repeated requests not to, SunTrust foreclosed on the mortgage that was given by Wallace *to secure the debt*." (Doc. 1-1, ¶ 10) (emphasis added). Through this language in her complaint, Wallace expressly acknowledges that the foreclosure sale was conducted in order to secure the debt on her mortgage. Moreover, the complaint is totally devoid of any allegations that the foreclosure sale was conducted for an improper purpose, or that SunTrust acted with ill will, malice, or ulterior motive in proceeding with the foreclosure sale. In the absence of allegations that the foreclosure was instituted for an improper purpose, Wallace has failed to state a claim for wrongful foreclosure under Alabama law. Thus, Defendants' motion to dismiss this claim is due to be **GRANTED.**

### C. Fraud Claim (Count II).

Wallace's allegations in reference to her fraud claim are:

> 19. SUNTRUST repeatedly misrepresented facts to WALLACE including but not limited to:
>
> > a. Granting WALLACE a forbearance but then reporting her loan as delinquent.
> >
> > b. Confirming that WALLACE was incompliance with the terms of forbearance but then wrongfully declaring her loan to be delinquent.
> >
> > c. Declaring the loan of WALLACE to be delinquent and foreclosing thereon when WALLACE was in total compliance with the forbearance terms as represented by SUNTRUST.
>
> 20. All misrepresentations and suppressions by SUNTRUST were made intentionally, recklessly, and/or negligently.
>
> 21. WALLACE properly relied upon the representations and suppressions of SUNTRUST and as a direct and proximate result thereof she was damaged.

(Doc. 1-1, at 6-7).

SunTrust argues that this claim should be dismissed because it is time-barred and because Wallace has failed to satisfy the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). Wallace argues that the claim is properly plead and that the statue of limitations did not commence until April 21, 2011 when the property was foreclosed upon.

Under Alabama law, the statute of limitations applicable to a fraud claims is two years. Ala. Code 1975 § 6-2-38(l). "Under [Ala. Code § 6-2-3] the two-year statute of limitations does not begin to run in a fraud case until 'the discovery by the aggrieved party of the fact constituting the fraud.' Ala.Code § 6-2-3." Waldrup v. Hartford Life Ins. Co., 598 F. Supp. 2d 1219, 1226 (N.D. Ala. 2008). However, if a plaintiff establishes fraudulent concealment tolling, "the limitations period commences once the fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co., 792 F.2d 1036, 1043 (11th Cir. 1986) (citing Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 281 So. 2d 636, 642-43 (Ala. 1973)).

As a preliminary matter, the undersigned observes that Wallace's fraud claim is not the model of clarity. Taking the factual allegations in the narrative portion of Wallace's complaint, together with the factual allegations in the fraud section of Wallace's complaint, it appears that Wallace is contending that in 2009, she began making increased mortgage payments in compliance with her forbearance agreement with SunTrust, that in her discussions with SunTrust, they did not tell her that the increased payments were not being applied to her loan or that her loan was in a delinquent status, and that

she did not learn that SunTrust deemed her loan delinquent until May 2010 when her payment was returned, and SunTrust sent her a letter advising that she needed to tender a payment of $19,494.66 to bring her loan current. According to Wallace, SunTrust and its representatives suppressed from her information about the true status of her loan, and what she was required to do in order to bring her loan current. Wallace further contends that she and her attorney had numerous discussions with SunTrust or its representatives during which she was promised that they would work with her in order to bring her loan current and to protect her credit.

Assuming the truth of Wallace's assertions, which is required at this stage of the proceedings, the undersigned finds that SunTrust's alleged representations that adherence to the foreclosure agreement would bring Wallace's loan current are time-barred in light of the fact that Wallace acknowledges that in May 2010, SunTrust rejected her payment and advised her that her loan was delinquent and that she needed to tender a payment of $19,494.66 to bring the loan current[4]. In other words, while SunTrust may have suppressed information regarding the true status of Wallace's loan in order to induce her to

_____

[4] The Plaintiff admits that by May 22, 2010 she was placed on notice that her loan was delinquent. (Doc. 1-1, ¶ 8) ("on May 22, 2010 [Plaintiff] received a letter from SunTrust . . . [that] stated that the loan was, in fact, delinquent")).

send in increased payments in accordance with the forbearance agreement, Wallace acknowledges that in May 2010, her monthly payment was returned and she was apprised that SunTrust deemed her loan delinquent. Because Wallace did not file the instant action until August 2012, which is more than two years *after* she learned that SunTrust considered her loan delinquent, the undersigned finds that Wallace's fraud claim regarding SunTrust's alleged representations that adherence to the foreclosure agreement would bring her loan current are time-barred.

With respect to Wallace's claim that SunTrust suppressed information regarding the true status of her loan[5], and promised to work with her to bring the loan current, the undersigned finds that Wallace has failed to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. The Rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed. R. Civ. P. This heightened pleading rule "serves an important purpose in fraud actions by alerting

---

[5] Wallace's claim that SunTrust suppressed information about the true status of her loan is in stark contrast with her acknowledgment that in May 2010, SunTrust returned her payment and advised her of the amount that she needed to tender in order to bring her loan current. Although it is not clear, the undersigned will assume, for purposes of this order, that Wallace is contending that SunTrust gave her conflicting information about the status of her loan at some point *after* May 2010.

defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1370-71 (11th Cir. 1997) (citations and internal quotation marks omitted); see also In re Eagle Bldg. Techs., Inc., Sec. Litig., 221 F.R.D. 582, 585 (S.D. Fla. 2004) ("The purpose of Rule 9(b) is to ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of and to eliminate those complaints filed as a pretext for discovery of unknown wrongs.") (citations and internal quotation marks omitted).

The requirements of Rule 9(b) must also be harmonized with Rule 8, which directs that a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and that averments of the complaint should "be simple, concise, and direct." Rule 8(a)(2),(d)(1); see also Brooks, 116 F.3d at 1371 (recognizing necessity of reading Rule 9(b) together with Rule 8); Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985) ("a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading.").

Under well established law, Rule 9(b) is satisfied if the complaint sets forth the following: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." United States ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002) (citations omitted); see also Hill v. Morehouse Medical Assocs., Inc., 2003 U.S. App. LEXIS 27956, *10, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) ("plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."). In other words, "to avoid dismissal, a complaint alleging fraud must plead the 'who, what, when, where and how' of the alleged fraud." Hay v. Bank of America, 2013 U.S. Dist. LEXIS 49052, *12 (N.D. Ga. March 29, 2013) (citations omitted) (dismissing fraud claim where plaintiff failed to identify any person responsible for committing the alleged fraud or the time or place of the fraudulent act); see also American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007)

(affirming dismissal of insurance fraud claims where plaintiff failed to identify the agents or corporate representatives who participated in the alleged fraud, failed to identify the dates when the agents rendered assistance, and failed to explain how the agents' conduct furthered the commission of the fraud); Echeverria v. BAC Home Loans Servicing, LP, 2012 U.S. Dist. LEXIS 44487, *10 (M.D. Fla. March 30, 2012) (dismissing fraud claim where plaintiffs failed to set forth the precise statements made, the time and place of each statement, the person responsible for making the statement, the content of each statement, or what defendants gained as a consequence of any statements to plaintiffs).

As outlined above, Wallace contends that SunTrust suppressed information regarding the true status of her loan, and promised to work with her to bring the loan current. However, Wallace does not specifically outline the individuals or agents of SunTrust who intentionally mislead her nor does she cite the dates on which the alleged misrepresentations occurred. Specifically, Wallace does not identify the specific agents of SunTrust who "confirm[ed] that [she] was incompliance with the terms of the forbearance" so as to intentionally mislead her about the status of her loan and the forthcoming foreclosure, nor does she provide dates on when the alleged

misrepresentations occurred.  Additionally, Wallace has not indicated what SunTrust obtained as a consequence of the alleged fraud.  As noted, Wallace acknowledges that in May 2010, SunTrust returned her payment and advised her of the amount that was required to bring her account current, but the complaint is devoid of any facts that indicate that Wallace continued to make any payments on the loan, or that SunTrust benefitted by providing her with inconsistent information *after* May 2010 regarding the status of her loan.  To the contrary, while the record reflects that Wallace continues to occupy the subject property, there is no indication that she made any payments after May 2010.  Accordingly, the Court concludes that Wallace has not satisfied the particularity requirements set forth in Rule 9(b).  As a result, SunTrust's motion to dismiss is due to be **GRANTED** with respect to Wallace's fraud claim.

### D. Breach of Contract Claim (Count III).

Next, Wallace claims that SunTrust breached the forbearance agreement by deeming her loan to be delinquent, and conducting the foreclosure sale although she complied with the terms of the forbearance agreement, and continued to make payments as required. (Doc. 1-1, ¶ 22-26).  "'The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance

under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" Shaffer v. Regions Financial Corp., 29 So. 3d 872, 880 (Ala. 2009) (citations omitted). The elements of a valid contract also include: "'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" Id. (citations omitted).

Defendant argues that Wallace's breach of contract claim should be dismissed because SunTrust has not breached the forbearance agreement and because Plaintiff's claim is barred by the Statute of Frauds[6]. (Doc. 11 at 7). SunTrust does not contest the validity of the forbearance agreement. Instead, SunTrust argues that under the agreement, it only agreed to refrain from foreclosing on Wallace's house for a four-month period. However, taking the facts in the light most favorable to Wallace, she asserts that she entered into a written forbearance agreement with SunTrust in 2009 which provided that she could "avoid foreclosure" if she complied with all requirements of the agreement, that she in fact complied with all requirements of the agreement, and was making her monthly

---

[6] The Alabama Statute of Frauds provides that an "agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000" must be evidenced by a writing or it is void. Ala. Code. § 8-9-2(7). Because the parties' forbearance agreement was in writing, it does not run afoul of the Statute of Frauds.

payments, when SunTrust rejected her payment in May 2010, deemed her loan delinquent, provided inconsistent information about the status of her loan, and foreclosed on her property. (Doc. 1-1, ¶ 6). Here again, Wallace's complaint is not the model of clarity; however, assuming that Wallace can prove that upon entering the forbearance agreement with SunTrust, she made the payments required under the forbearance agreement, was in compliance with the original loan agreement at the time SunTrust rejected her payment in May 2010, and subsequently foreclosed on her property, she can establish a breach of contract claim based on the parties' forbearance agreement. Accordingly, Defendants' motion to dismiss is due to be **DENIED** with respect to Wallace's breach of contract claim.

### E. Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV).

Defendant contends that Count Seven of the complaint is due to be dismissed because Alabama law does not recognize claims for breach of the covenant of good faith and fair dealing outside the insurance policy context. (Doc. 11 at 19). Defendant is correct that Alabama has refused to recognize a tort claim for breach of the duty of good faith outside the insurance context. See Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Ala. Power Co., Inc., 601 So. 2d 942, 944 (Ala. 1992) (quoting Tanner v. Church's Fried Chicken, Inc., 582 So.

2d 449, 451 (Ala.1991)) ("We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases."); Kennedy Electric Co. v. Moore-Handley, Inc., 437 So. 2d 76, 81 (Ala. 1983) (same). Accordingly, Defendants' motion is due to be **GRANTED** with respect to Wallace's claim for breach of the covenant of good faith and fair dealing.

### F. Intentional Infliction of Emotional Distress (Count V).

Count Five of Plaintiff's complaint asserts a claim for intentional infliction of emotional distress, which is better known within the state of Alabama as the tort of outrage. In order to recover on the tort of outrage, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Green Tree Acceptance, Inc. v. Standridge, 565 So. 2d 38, 44 (Ala. 1990) (citation omitted).

The Alabama Supreme Court has "consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, [the Alabama Supreme Court] has held in a large majority of the outrage cases reviewed that no jury question was presented." Thomas v. BSE Indus. Contractors, Inc., 624 So.

2d 1041, 1044 (Ala. 1993) (citing multiple cases).  In fact, the Alabama Supreme Court recently explained that the tort of outrage is "so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." Little v. Robinson, 72 So. 3d 1168, 1172 (Ala. 2011) (quoting Potts v. Hayes, 771 So. 2d 462, 465 (Ala.2000)).

Wallace's claim stems from the servicing of her mortgage loan and the subsequent foreclosure on her home.  Assuming the truth of her assertions, they simply do not rise to the necessary level of egregious conduct nor do they arise within the three contexts in which the Alabama Supreme Court has recognized outrage claims.  Indeed, several federal courts have dismissed outrage claims based on similar allegations of mortgage servicing deficiencies. See, e.g., Jackson v. Countrywide Home Loans, Inc., 2012 U.S. Dist. LEXIS 29994, 2012 WL 777180, at *8 (M.D. Ala. Mar. 7, 2012) ("Plaintiff's tort of outrage claim, which is related to Defendants' alleged debt collection efforts and which does not fall into one of the presently recognized contexts in which a tort of outrage claim is appropriate, is due to be dismissed.").  For these reasons,

SunTrust's motion to dismiss Wallace's outrage claim is due to be **GRANTED**.

### G. Negligence and Wantonness Claims (VI and VII).

In Counts Six and Seven, Wallace asserts common-law negligence and wantonness claims, and asserts that SunTrust negligently and wantonly "handled, serviced and processed payment, fees and all aspects of [her] Mortgage loan." (Doc. 1-1 ¶¶ 35, 39). For each claim, Wallace requests compensatory damages, including mental anguish and economic injury. (Id., at ¶¶ 36, 40).

Wallace's claims fail as a matter of law. Recent federal precedent interpreting Alabama law has uniformly found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law, at least in the absence of personal injury or property damage (neither of which are alleged by Plaintiff). See, e.g., Blake v. Bank of America, N.A., 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing"); Webb v. Ocwen Loan Servicing, LLC, 2012 U.S. Dist. LEXIS 167079, 2012 WL 5906729, *7 (S.D. Ala. Nov. 26, 2012) ("under Alabama law a cause of action for negligent servicing of a mortgage against Ocwen cannot be maintained where the damages are economic, i.e., lost

commissions"); <u>Forester v. Bank of America, N.A.,</u> 2012 U.S. Dist. LEXIS 111346, 2012 WL 3206471, *5 (S.D. Ala. Aug. 7, 2012) ("Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care. Pure economic loss - which is what [Forester] claims - does not suffice.") (citations omitted); <u>Fassina v. CitiMortgage, Inc.,</u> 2012 U.S. Dist. LEXIS 91267, 2012 WL 2577608, *7 (N.D. Ala. July 2, 2012) ("Plaintiff's claim alleging negligent, reckless, and/or wanton mortgage servicing is not valid under Alabama law."); <u>McClung v. Mortgage Electronic Registration Systems, Inc.,</u> 2012 U.S. Dist. LEXIS 63834, 2012 WL 1642209, *8 (N.D. Ala. May 7, 2012) ("the court similarly concludes that there is no cause of action for negligent or wanton mortgage servicing under Alabama law"). These decisions soundly reject the availability of negligence or wantonness claims under Alabama law in circumstances similar to those before this Court, and emphasize that mortgage servicing obligations are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public. <u>See generally</u> <u>Barber v. Business Products Center, Inc.,</u> 677 So. 2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"),

overruled on other grounds by White Sands Group, LLC v. PRS II, LLC, 32 So. 3d 5 (Ala. 2009); Temploy, Inc. v. National Council on Compensation Ins., 650 F. Supp. 2d 1145, 1153 (S.D. Ala. 2009) ("The general rule in Alabama is that the mere failure to perform a contractual obligation will not sustain an action sounding in tort."). To the extent, then, that Wallace seeks to derive tort claims of negligence and wantonness to recover economic loss (no physical injuries) stemming from SunTrust's purported failure to perform contractual duties in the servicing of her mortgage, the Court finds that Wallace's negligence and wantonness claims fail to state claims upon which relief can be granted.

While Wallace alleges that SunTrust's negligence and wantonness has caused mental anguish, she has failed to assert any facts suggesting that she has suffered physical injury or experienced an immediate risk of physical injury on account of SunTrust's conduct such that it could be liable for the torts of negligence or wantonness. See Brown v. First Federal Bank, 95 So. 3d 803, 818 (Ala. Civ. App. 2012) ("Damages for mental anguish are not recoverable for negligence except where the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct."). Accordingly, Defendants'

motion to dismiss Wallace's negligence and wantonness claims is due to be **GRANTED**.

**H.  Slander of Title Claim (VIII).**

Count Eight of Wallace's complaint contains a state law claim for slander of title.  The elements of slander of title under Alabama law are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

Merchants Nat. Bank of Mobile v. Steiner, 404 So. 2d 14, 21 (Ala. 1981 (citing Womack v. McDonald, 219 Ala. 75, 121 So. 57, 59 (1929)).

Wallace's allegations related to her slander of title claim are as follows:

> 41. WALLACE realleges and adopts all the relevant forgoing paragraphs set forth hereandabove.
>
> 42. SUNTRUST, by foreclosing on the real property owned by WALLACE herein has caused a cloud to be placed on title of said property.
>
> 43. As a direct and proximate result of the slandering of title by SUNTRUST, WALLACE has been caused to suffer injuries, including, but not limited to damage to her credit.

(Doc. 1-1 at 10, ¶¶ 41-43). Defendants contend that these allegations fail to allege facts satisfying the elements of slander of title. Specifically, SunTrust argues that Wallace has not alleged publication of false information because she has admitted that she fell behind on her mortgage payments. (Doc. 11 at 27). Wallace, in response, asserts that "SunTrust had no right to publish information stating that the property belonged to them when the Plaintiff was not in breach of the mortgage or forbearance agreement." (Doc. 21-1 at 4). Here again, Wallace's complaint is not the model of clarity. The complaint fails to set forth to whom such information was published. Additionally, as noted with respect to her wrongful foreclosure claim, Wallace has not alleged that SunTrust acted for an improper purpose, let alone that SunTrust acted with malice. The act of the defendant "against which a slander-of-title action is taken must have been false and malicious when it was performed." Folmar v. Empire Fire & Marine Ins. Co., 856 So. 2d 807, 809 (Ala. 2003). Because Wallace has failed to state a cognizable claim for slander of title, Defendants' motion to dismiss this claim is due to be **GRANTED.**

### I. Transfer of Title Claim (IX).

Wallace's final claim is entitled "Transfer of Title" and is asserted against Defendant Fannie Mae. Wallace requests

27

that the title to her property be conveyed back to her. As best the Court can discern, Wallace's "Transfer of Title" claim is based on her theory that if she was able to prevail on her wrongful foreclosure claim, then she would be entitled to recover the title to her property. See Cooper v. Fannie Mae, 96 So. 3d 102, 104 (Ala. 2002) (finding that if a claimant were able to prove that a foreclosure sale was wrongful she could set aside the foreclosure sale). However, in light of the undersigned's finding that Wallace has failed to state a cognizable claim for wrongful foreclosure, her "Transfer of Title" claim must fail. Accordingly, Defendants' Motion to Dismiss this claim is due to be **GRANTED.**

### III. Conclusion

Based on the foregoing, the undersigned RECOMMENDS, for the reasons stated herein, that Defendants' motion be **GRANTED** with respect to the following claims: wrongful foreclosure (Count I), fraud (Count II), breach of implied covenant of good faith and fair dealing (Count IV), intentional infliction of emotional distress (Count V), negligence (Count VI), wantonness (Count VII), slander of title (Count VIII) and transfer of title (IX), and be **DENIED** as to Plaintiff's breach of contract claim.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **16th** day of **August, 2013.**

　　　　　　　　　　　　　　_____/s/ SONJA F. BIVINS_____
　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**